# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOBBY WALLACE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-11271** |
| **BURL CAIN** | **SECTION "N" (6)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

# I.  PROCEDURAL HISTORY[1]

On May 12, 1992, petitioner, Bobby Wallace, currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged by bill of information with four counts of armed robbery, violations of La. R.S. 14:64.  On October 28, 1992, the State nolle prosequied count two of the bill of information.  On October 29, 1992, Wallace proceeded to trial in Orleans Parish Criminal District Court.  The jury found Wallace not guilty as to count three, and a mistrial was ordered as to counts one and four after the jury was unable to reach a verdict.  On April 26, 1993, Wallace was retried in Orleans Parish Criminal District Court and a twelve-person jury found him guilty as charged on counts one and four. On May 3, 1993, Wallace was sentenced on each count to serve twenty-five years at hard labor without benefit of parole, probation or suspension of sentence, with the sentences to run concurrently.  On November 9, 1993, Wallace was adjudicated to be a third-felony offender.  As a result, the trial court vacated the original sentence imposed on count one and resentenced Wallace to serve sixty-six years at hard labor without benefit of parole, probation or suspension of sentence, to run concurrently with the sentence imposed on count four.

On March 29, 1994, the Louisiana Fourth Circuit Court of Appeal affirmed Wallace's convictions and sentences in an errors patent appeal.  *State v. Wallace*, No. 93-

---

[1]A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's opinion, *State v. Wallace,* No. 2003-KA-0193, 862 So.2d 286 (La. App. 4 Cir. Nov. 26, 2003).

1426, 635 So.2d 1349 (La. App. 4 Cir. Mar. 29, 1994) (unpublished opinion). Wallace did not file a writ application to the Louisiana Supreme Court seeking relief from the state appellate court's March 29, 1994 adverse opinion.

Following the Louisiana Fourth Circuit's denial of his direct appeal, Wallace sought post-conviction relief. After the district court denied his post-conviction relief application, Wallace filed a writ application with the Louisiana Fourth Circuit. On February 26, 1998, the Louisiana Fourth Circuit denied Wallace's writ application. *State v. Wallace*, No. 97-1766 (La. App. 4 Cir. Feb. 26, 1998) (unpublished opinion). On September 25, 1998, however, the Louisiana Supreme Court granted Wallace's writ application in part, remanding the matter to the trial court with an order to grant Wallace an out-of-time appeal. *State ex rel. Wallace v. State,* 726 So.2d 4 (La. 1998). On August 23, 2001, the trial court granted Wallace an out-of-time appeal.

On November 26, 2003, the Louisiana Fourth Circuit Court of Appeal rejected Wallace's out-of-time appeal, affirming his convictions and sentences. *State v. Wallace*, No. 2003-0183, 862 So.2d 286 (La. App. 4 Cir. Nov. 26, 2003). On April 8, 2004, the Louisiana Supreme Court denied Wallace's writ application, thereby rendering his convictions and sentences final. *State v. Wallace*, 870 So.2d 269 (La. 2004).

On December 28, 2004, Wallace filed a second application for post-conviction relief with the state district court. Wallace's efforts in this regard culminated on October 6,

2006, when the Louisiana Supreme Court denied his writ application.

On November 28, 2006, Wallace filed the instant petition for writ of habeas corpus, raising the following claims:  1) He was prejudiced by the introduction of hearsay testimony; 2) He was unconstitutionally denied assistance of counsel at a physical line up; 3) The trial court erred in failing to grant a mistrial based upon the introduction of "other crime" testimony; 4) The evidence was insufficient to prove that he was guilty beyond a reasonable doubt;    5) His constitutional rights were violated when the trial court permitted the jury to continue deliberating after a juror expressed doubts as to her ability to deliberate; 6) The trial court erred in adjudicating him to be a third-felony offender; and, 7) He was denied effective assistance of counsel.  The State, in its response (rec. doc. 6), concedes that the instant action is timely and that Wallace has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Accordingly, this court shall review the pertinent facts, then proceed to consider the merits of Wallace's claims.

## II.  FACTS[2]

James A. Ghio testified that on December 17, 1991, two men ran up to him while he was inserting a key into the trunk of a car while in front of his Algiers Point

---

[2]The facts are taken, in part, from the state appellate court's opinion, *State v. Wallace*, No. 2003-0193, 862 So.2d 286 (La. App. 4 Cir. Nov. 26, 2003).

apartment at 323 Morgan Street.  One of the men, later identified as the defendant, put a gun to Mr. Ghio's head, frisked him, and robbed him of his money and wallet.  The second person ran around to the driver's door where the victim's fiancée, Jennifer Rader, was exiting.  After robbing Mr. Ghio, the defendant pulled Ms. Rader's mother, Marie Harper, out of the front passenger seat of the car.  Mr. Ghio noticed when the defendant was frisking him that he and the defendant were very close in height.  He also noted that the second robber was shorter than the defendant.  One of the two men told Mr. Ghio to walk to the corner.  When he got there one of the men told him to run.  As he ran he heard one robber tell the other to shoot him.  Mr. Ghio ran to a neighbor's home where he called 911.  He heard a gunshot while on the telephone with the 911 operator.

Jennifer Rader testified that the second perpetrator robbed her, not the one who robbed Mr. Ghio.  She never had an opportunity to get a good look at the person who robbed Mr. Ghio.  Ms. Rader testified that one of the robbers told the other to shoot Mr. Ghio.  The person who robbed Ms. Rader of her purse and contents told her and her mother to walk away, and both robbers fled in the opposite direction. Ms. Rader followed until she heard a gunshot, whereupon she turned around and returned to the scene.  She said her mother wore glasses, but had them in her purse at the time of the robbery.  She identified someone in a photo lineup.  She also went to a physical lineup, but was not able to identify anyone.

It was stipulated that if Officer Larry Nettles were called as a witness he would

testify that he lifted a fingerprint from the car of Ms. Rader. New Orleans Police Officer Lawrence E. James testified that he compared this latent fingerprint to defendant's fingerprints, but was unable to make a positive identification. Nor was he able to match them to "Johnny Green," or to Ms. Rader. Officer James explained that the latent print lifted from Ms. Rader's car was only a partial print, and that this prevented him from being able to make a match based on the necessary ten points of identification. However, he conceded that it was possible he could have matched it to someone else's fingerprints.

New Orleans Police Officer Steven Andry testified that on March 23, 1992, he and his partner arrested the defendant on an outstanding warrant. They received information that the defendant was in a particular vehicle at the corner of Newton Street and Whitney Avenue in Algiers. They observed the vehicle at that location, and requested assistance from other officers. Before those other officers arrived, the vehicle drove off. Officer Andry and his partner attempted to pull the vehicle over by activating their blue lights and siren, at which point the vehicle took off. After a twenty-minute high-speed chase into Gretna, the vehicle ran into a ditch. The defendant fled on foot, jumping over several fences, but was apprehended within one or two blocks.

Pansy Dixon testified that at dusk on December 17, 1991 she heard a woman who lived on Delaronde Street around the corner from her screaming that she had been robbed. Ms. Dixon ran to the corner and observed a thin male with his head covered by

something light in color, carrying a shopping bag, run and enter a truck. She observed a second male standing outside of the truck. She ran up to the truck and got the license plate number before it drove off. Ms. Dixon testified that Delaronde Street was lit up, that it had three streetlights in each block.

Carmen Bourg testified that she was robbed on December 17, 1991 in the 300 block of Delaronde Street after driving home from work. She stated that the armed robber took her shoulder purse, along with the packages she was holding.[3] She was face to face with the robber, a thin black male with white kerchief covering his hair and his hairline, carrying a silver revolver. She later identified the defendant's photograph in a lineup shown to her in early February. She also identified the defendant in a subsequent physical lineup, and identified him in court. She was one hundred percent certain of her identification.

New Orleans Police Officer James Steinkamp Jr. testified that Ms. Rader identified Johnny Green in a photographic lineup he presented to her on December 18, 1991 as the person who robbed her. He subsequently developed the defendant as a suspect. Ms. Bourg identified the defendant in a photographic lineup he presented to her on February 5, 1992, as the person who robbed her. Officer Steinkamp conducted a physical lineup on March 31, 1992, where both Mr. Ghio and Ms. Bourg identified the defendant. Ms. Rader was at this lineup, but was unable to identify anyone.

---

[3]*See* State rec., supplemental vol. 1 of 1, trial transcript at p. 82, lines 29-30.

Officer Steinkamp testified on cross examination that he showed two other photo lineups to Ms. Bourg in which she did not identify anyone, but later said that neither of those two lineups contained the defendant's photo. Officer Steinkamp said he had not been called to testify in a case against Johnny Green, who apparently was arrested in connection with the robberies, but did not know whether Green had pleaded guilty. Officer Steinkamp conceded that the six-photo lineup he first showed Ms. Bourg depicted the defendant as noticeably having the highest or longest hair.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has

noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

### A. Introduction of Hearsay Testimony

Wallace complains that the prosecutor, in his opening statement, improperly referred to hearsay statements linking Wallace to the armed robberies. As explained by the Louisiana Fourth Circuit:

In his opening statement, the prosecutor referred to statements by Larry Hebert, who testified at the first trial, but did not testify at the second trial, that is the subject of this appeal. The prosecutor also referred to statements by the mother of Johnny Green, a juvenile apparently arrested as the second robber, and to statements by an unnamed police officer, presumably Det. Steinkamp, who investigated the robberies.

*Wallace*, 862 So.2d at 295. Specifically, the prosecutor stated:

Now, Larry Hebert, just so happened the night before, December 16th, he was over at a friend's house watching the football game on TV. And someone at the house asked to borrow his truck. Now, it wasn't someone he knew that well. But the friend he was with, watching the game, the friend's house he was at, said, "I've known him for a long time. He's a good guy. You can trust him."

So Larry let his truck be used. He thought the guy was just going to run to the store or something, and be back in a minute. But the guy never came back. And Larry was concerned because it wasn't someone he knew. So he waited and the game was over, and the truck still wasn't back. But the friend said, "Don't worry he'll bring your truck back. He got tied up or something." So Larry went ahead and walked home.

Next morning when he woke up, the truck still wasn't there, still gone. Larry Hebert still didn't know where his truck was until the police came out and made a visit to his house. The police told him, "Your truck was used in an armed robbery. One of the people involved got the license plate number, took it down. Now, where were you on the night of December 17th?"

That's when Larry Hebert explained to the police that he had lent his truck. Now, he didn't know the identity of that person. But he said, "Well, the guy I was with, the guy whose house I was at watching the game with, he knows who that is. Go ask him."

So the police went to that individual. That's where they got the name Johnny Green. Eventually, Johnny Green, who was a juvenile, was arrested in connection with this armed robbery.

That's when the police got their break that led them to Bobby Wallace. Detective Steinkamp, who is a robbery detective, received a phone call from Johnny Green's mother. Johnny Green's mother told Detective Steinkamp, "Wasn't Johnny Green that did that. Sure, he borrowed the truck, but he lent

it to Bobby Wallace."

        So with that information, the police officer, Detective Steinkamp, generated what's called a "photograph lineup." If you've sat on a jury before you may be acquainted with it. It's a series of photographs for-

*Wallace*, 862 So.2d at 295-296.

        At that point in the prosecutor's opening statement, defense counsel interrupted and requested a bench conference. Thereafter, the trial court admonished the jury as follows:

> Ladies and gentlemen, I caution you, and I think one of the attorneys said this, but just to give it my imprimatur, none of these statements that you've heard from the attorneys, as they've just spoken to you, is, in fact, evidence in this case. And the only evidence that you are to consider and to weigh is what you hear from this witness stand. Okay?

*Wallace,* 862 So.2d at 296.

        Later, during a break in the trial, defense counsel, outside the presence of the jury, moved for a mistrial on the ground that the prosecutor referred to hearsay in his opening statement. The trial court denied the motion for a mistrial, but provided, prior to closing arguments, another admonishment to jurors:

> I just caution you, that this is the time for the attorneys to remind you of the testimony that's gone by, to interpret that for you, obviously in the best light that favors their position. The only caution I'm going to give you is this: What the attorneys say is not evidence. If the attorneys say something about testimony that was given and that does not square with your account of what you heard, your account is what governs, not what the attorneys say. Okay?

*Wallace*, 862 So.2d at 296.

Following its review of the pertinent facts, the Louisiana Fourth Circuit examined applicable state law, focusing on the precedent set in *State v. Scott*, 454 So.2d 851 (La. App. 5th Cir. 1984), wherein the court provided that while "'a prosecutor may not refer to inadmissible hearsay, in the absence of prosecutorial bad faith and substantial prejudice to the defendant, the error is not reversible.'" *Wallace*, 862 So.2d at 297 (quoting *Scott*, *supra*). Thereafter, the *Scott* court reasoned:

> **The defendant has not alleged or proven bad faith on the part of the prosecution, and we find there is no clear and substantial prejudice to the defendant resulting from the district attorney's opening statements ... [T]here is sufficient evidence to connect the defendant with the crime for which he is charged independent of any inference in the district attorney's opening statement.**

*Wallace,* 862 So.2d at 298 (quoting *Scott*, 454 So.2d at 853-854 (emphasis original)).

In the instant matter, as in *Scott*, there was sufficient evidence connecting Wallace to the armed robberies at issue. Two of the armed robbery victims, Carmen Bourg and James Ghio, positively identified Wallace as the armed man who robbed them, with Bourg stating that she "was one hundred percent certain of her identification." *Wallace*, 862 So.2d at 292.

Based upon the above significant evidence reflecting Wallace's guilt, the court finds that Wallace's right to due process was not impinged as a result of the hearsay remarks

set forth in the prosecutor's opening remarks. The state courts' denial of relief did not constitute an unreasonable application of Supreme Court law. *See Bell*, *supra*. Accordingly, Wallace is not entitled to habeas corpus relief.

## B. Denial of Assistance of Counsel at Physical Lineup

Wallace argues that he was unconstitutionally denied counsel at a physical line-up where two of the armed robbery victims, James Ghio and Carmen Bourg, identified him as the man who robbed them at gunpoint. At the time the physical line-up was conducted, Wallace had been arrested and had been appointed counsel. Wallace contends that to place the victims in the same room for the purpose of identifying him without his counsel being present constituted a violation of his constitutional rights. In support of his contention, petitioner cites *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Kirby v Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), cases wherein the Supreme Court provided that defendants had a constitutional right to counsel at post-indictment line-ups.[4] For the following reasons, the court finds Wallace's argument to be without merit.

First, Wallace, at the time of the line-up at issue, had not been formally charged via a bill of information or indictment. As such, *Wade*, *supra*, and *Kirby*, *supra*, are not

---

[4]Petitioner also cites *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a case wherein the Supreme Court provided that indigent defendants are entitled to appointed counsel to represent them at trial.

applicable under the facts before this court.  In fact, as the district court noted in *Campbell v. Fischer*, 275 F.Supp.2d 321, 328 (E.D. N.Y. Jul. 23, 2003), there is no clearly established Supreme Court precedent affording a defendant the right to counsel at a pre-indictment or pre-bill of information identification proceeding.  As such, the state courts, in denying the instant claim, did not run afoul of Supreme Court law.

Second, a review of the record reflects that the robbery victims were not, as Wallace implies, placed in a small room side by side, viewing the line-up and hearing their fellow victim's identification of Wallace as their assailant.  New Orleans Police Detective James Steinkamp testified that the victims were brought into an auditorium-size room which seats approximately 150 people.  When they entered the room, Detective Steinkamp instructed them to "sit separate and apart".  Further, the victims were instructed that if they saw their alleged assailant in the line-up, they should not speak out, but rather, make a "mental note" of the line-up position of the person they identified, then inform Steinkamp of their identification in a private interview.[5]

Based upon the above, the court finds that Wallace suffered no due process violation by virtue of the fact that his counsel was not present at the pertinent physical line-up.  As such, he is not entitled to habeas corpus relief.

---

[5]*See* State rec., vol. 1 of 5, trial transcript at pp. 47-50.

### C.  Failure to Grant Mistrial Based Upon Introduction of Improper Testimony

Wallace complains that "other crime" evidence was improperly brought to the jury's attention via the testimony of Jennifer Rader.  Specifically, Ms. Rader made reference to the fact that there were two armed robbers and petitioner contends that Rader's reference in this regard constituted grounds for a mistrial since the armed robbery charge against him, with respect to Ms. Rader, had been nolle prosequied.

As the Louisiana Fourth Circuit noted in dismissing the instant claim, "[t]here was no defense objection at any point during Ms. Rader's testimony, much less a motion for mistrial based on her testimony."  *Wallace*, 862 So.2d at 295.  Further, as noted above, two of the armed robbery victims, James Ghio and Carmen Bourg, positively identified Wallace as the man who robbed them at gunpoint.  Based upon this, the court finds that Wallace was not prejudiced by the reference, during Jennifer Rader's testimony, to two armed robbers. Accordingly, Wallace's claim for habeas corpus relief is without merit.

### D.  Insufficiency of Evidence

Wallace complains that the victims' identifications of him as the person who robbed them at gunpoint were insufficient to support his armed robbery convictions.  When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case.

*See* 28 U.S.C. § 2254 (d)(1).

In its analysis of Wallace's insufficiency of evidence claim, the Louisiana Fourth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with corresponding state law, providing:

> This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in *State v. Ragas*, 98-0011 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
>
>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green,* 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall,* 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall; Green; supra.* "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith,* 600 So.2d 1319 (La.1992) at 1324.
>>
>> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro,* 431 So.2d 372 (La.1982). The

16

> elements must be proven such that every reasonable hypothesis
> of innocence is excluded. La. R.S. 15:438. This is not a separate
> test from *Jackson v. Virginia, supra,* but rather an evidentiary
> guideline to facilitate appellate review of whether a rational juror
> could have found a defendant guilty beyond a reasonable doubt.
> *State v. Wright,* 445 So.2d 1198 (La.1984). All evidence, direct
> and circumstantial, must meet the *Jackson* reasonable doubt
> standard. *State v. Jacobs,* 504 So.2d 817 (La.1987).
>
> 98-0011, at p. 13-14, 744 So.2d at 106-107, quoting *State v. Egana,* 97-0318,
> p. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.

*Wallace*, 862 So.2d at 292-293.

The state appellate court then reviewed Wallace's arguments, the same arguments set forth in the instant habeas petition, supporting his claim that the victim's identifications of him as the perpetrator were insufficient to support his conviction. First, Wallace points to the fact that one of the victims, James Ghio, was unable to identify him in a photographic lineup. (Rec. doc. 1, p. 28). The Fourth Circuit, however, countered that petitioner's photograph was not in the group of photographs presented to Ghio; "Officer Steinkamp testified that Mr. Ghio was shown a photo lineup containing the photograph of another suspect." *Wallace*, 862 So.2d at 294.

Second, Wallace points to the fact that neither of the other people, Jennifer Rader and her mother, Marie Harper, in the vehicle with Ghio at the time of the armed robbery were able to identify petitioner as the perpetrator. (Rec. doc. 1, p. 28). However, Ms. Rader's failure to identify petitioner is attributable to the fact that a second person accosted her, while petitioner robbed Ghio and Harper. As for Harper's failure to identify petitioner,

17

the Fourth Circuit noted:

> The testimony indicated that the defendant had been acquitted of robbing Ms. Harper, which was in fact true. However, Mr. Ghio said that Ms. Harper was very old, could not see well, and was going to have an operation for cataracts. Ms. Rader said her mother, Ms. Harper, wore glasses but did not have them on at the time of the robbery.

*Wallace*, 862 So.2d at 294-295.

Third, Wallace attacks Mr. Ghio's identification of him based upon Ghio's inability to provide a physical description of his assailant, informing police only that the assailant was approximately the same height as Ghio. (Rec. doc. 1, p. 28). The state appellate court, however, noted that Ghio was able to provide police with details regarding his assailants, details corroborated by victims, Carmen Bourg and Jennifer Rader.

> Mr. Ghio recalled that the defendant was armed with a silver gun, what he believed was a revolver, and that the defendant's head was covered with a white handkerchief. Ms. Bourg, who also identified the defendant as the person who robbed her moments later around the corner, also testified that the robber was armed with a silver revolver and had a white bandanna on his head. Ms. Rader said the person who robbed Mr. Ghio had a silver or nickel gun.

*Wallace*, 862 So.2d at 293.

Next, Wallace proceeds to attack Carmen Bourg's identification, stating that Ms. Bourg "could not identify him in any of the photographic lineups presented to her." (Rec. doc. 1, p. 28). However, as the Fourth Circuit noted, Ms. Bourg's identification of Wallace was stronger than Mr. Ghio's identification.

> Ms. Bourg was robbed one block away from Mr. Ghio's robbery. She was face to face with the robber-he grabbed the purse from her shoulder and the

packages she had in her left hand.  She described him as a thin black male with [a] white kerchief covering his hair and his hairline, carrying a silver revolver. Pansy Dixon, who lived near Ms. Bourg and came out upon hearing her scream that she had been robbed, testified that Ms. Bourg's street was lit up-it had three streetlights in each block.  The defendant mistakenly states in his brief that Ms. Bourg did not identify the defendant in a photo lineup.  Ms. Bourg identified the defendant's photograph in a lineup shown to her by Office Steinkamp on February 5, 1992.  She did not identify the defendant in the other two photo lineups she was shown, for the very good reason that those other two lineups did not contain photos of the defendant. Ms. Bourg also identified the defendant in a March 31, 1992 physical lineup, and identified him in court.  She was one hundred percent certain of her identification.

*Wallace*, 862 So.2d at 294.

Finally, Wallace points to the fact that none of the fingerprints removed from Jennifer Rader's vehicle matched his fingerprints, that the physical identifications by Ghio and Bourg were tainted and that, as a result of an injury suffered from an earlier gunshot wound, he was not capable of running from a crime scene, as attested to by Ghio and Bourg. (Rec. doc. 1, pp. 30-32).   On appeal, the Louisiana Fourth Circuit rejected the above arguments, reasoning:

In his argument in this assignment of error, the defendant argues that one reason the evidence was insufficient to sustain his conviction is because some of it was tainted.  The defendant suggests that the physical lineup involved collusion between Mr. Ghio, Ms. Bourg, Ms. Rader and/or police, noting that all three witnesses viewed the physical lineup together.  However, Officer Steinkamp testified that the witnesses sat apart from each other at the lineup, and that each was asked to indicate on a piece of paper whether they could identify someone in the lineup.

The defendant argues that medical records obtained in February 1999-almost six years after his trial-reflect that in June 1990 defendant was suffering

from a seizure disorder and blackouts as a result of having sustained a gunshot wound to his head. He claims the records reflect that he was provided a brace for his right foot due to paralysis from the gunshot wound. The defendant suggests that these facts call into question the sufficiency of the evidence, as in both robberies the victim testified that the robber ran. The defendant submits that the "willingness to go to trial without the medical records in hand despite there being subpoenaed was serious error." There is no merit to this part of the defendant's argument insofar as this appeal is concerned. There is no indication that any action by the trial court or the State prevented the defendant from presenting evidence of any physical disability. If defendant discovered new and material evidence that could not have been discovered through reasonable diligence before his trial, he should have filed a motion for a new trial. The defendant raises no claim that his counsel was ineffective in failing to obtain and present any such evidence.

The defendant suggests that the evidence is insufficient to support his convictions because those convictions essentially rest on his identification by the victims in each case, Mr. Ghio and Ms. Bourg. In a case where there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty. *State v. Marcantel,* 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56.

Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crimes charged present beyond a reasonable doubt.

*Wallace*, 862 So.2d at 294-295.

Under La. R.S. 14:64, armed robbery is defined as follows:

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

In the instant matter, as is set forth above, two witnesses, James Ghio and

Carmen Bourg, identified Wallace as the man who robbed them at gunpoint, taking Ghio's

wallet and Bourg's purse and packages. Clearly, viewing such evidence in a light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of armed robbery present beyond a reasonable doubt. Accordingly, Wallace's insufficiency of evidence claim does not warrant federal habeas corpus relief.

### E. Jury Improperly Allowed to Continue Deliberating After Juror Expressed Doubts Regarding Ability to Deliberate

Wallace complains that his constitutional rights were violated when a juror expressed doubts about her ability to deliberate and the court, rather than declaring a mistrial, allowed the jury to continue to deliberate and ultimately render a verdict. As the Louisiana Fourth Circuit explained, petitioner's complaint arises from a situation where the jury, "approximately one-half hour into deliberations", "was returned into the courtroom" and an "unidentified juror informed the court that she felt it would not be fair for her to serve on the jury because of some names she recognized during the trial testimony." *Wallace*, 862 So.2d at 302. In response, the trial court "advised the juror that the jury's decision had to be based on the evidence, that no one could volunteer outside information, and that any such information did not exist unless the jury heard if from the witness chair." *Id*. Thereafter, upon receiving an assurance from the juror that "everything was all right", the court allowed the jury to continue its deliberations. *Id*.

In addressing the instant claim, the Louisiana Fourth Circuit reasoned:

At no point did the defendant object to the juror continuing to deliberate. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A); *State v. Seals,* 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373; *State v. Spain,* 99-1956, p. 11 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, 886. Accordingly, the defendant is precluded from raising any claim of error here.

*Wallace*, 862 So.2d at 302.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state

court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.

In the instant situation, the Louisiana Fourth Circuit issued the last reasoned decision, clearly declining, based on the procedural ground that petitioner failed to lodge a contemporaneous objection, to review petitioner's claim that the trial court erred in failing to declare a mistrial. It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review. *Id*.

A federal habeas petitioner, however, may be excepted from the procedural

default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Wallace has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. Further, this court's review of the record does not support a finding that any factor external to the defense prevented Wallace from raising the instant claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented Wallace from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43). Having failed to show an objective

cause for his default, the court need not determine whether prejudice existed, and Wallace has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

Wallace's claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, Wallace must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, Wallace must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F .3d at 903.

Wallace does not present and the record does not contain evidence that suggests his actual innocence. Accordingly, Wallace has failed to overcome the procedural bar to the instant claim. As such, the claim is procedurally barred and must be dismissed with prejudice for that reason.

### F. Trial Court Erred in Adjudicating Petitioner to be a Third-Felony Offender

Wallace argues that his adjudication as a third-felony offender was invalid because the documentation submitted as to a probation revocation for one of the prior convictions used to enhance his present sentence did not show that he was advised of his right to a hearing and his right to remain silent, two of his *Boykin* rights. However, the Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 396, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.... If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-404.[6]

      As set forth above, Wallace cannot challenge the constitutionality of one of his prior convictions for purposes of attacking the enhanced sentence he is presently serving. Accordingly, the instant claim for habeas relief is without merit.

### G.  Ineffective Assistance of Counsel

      Wallace's ineffective assistance of counsel claim arises from his argument that he was wrongfully adjudicated to be a third-felony offender.  Wallace contends that counsel was unconstitutionally ineffective due to his failure to object when a prior conviction, for which there was insufficient evidence reflecting that Wallace had properly been advised of his right to a hearing and his right to remain silent, was used to enhance his present sentence. Wallace raised this claim in connection with his state post-conviction proceedings.  The Louisiana Fourth Circuit Court of Appeal, recognizing that the instant claim was, in actuality, a challenge to Wallace's adjudication as a third-felony offender, denied Wallace's writ application as procedurally barred under La.C.Cr.P. art. 930.3 since "[t]here is no review of sentencing errors post conviction." *State v. Wallace*, No. 2005-K-1187 (La. App. 4 Cir. Dec.

---

[6]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." *Id.* at 404.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction. *Id.* at 405-406.  Neither of these exceptions are applicable in the instant situation.

16, 2005) (unpublished opinion).[7] With respect to Wallace's writ application to the Louisiana Supreme Court seeking relief in connection with the state appellate court's December 16, 2005 adverse decision, the state high court likewise found the instant claim procedurally barred under LSA-C.Cr.P. Art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996). *See State ex rel. Wallace v. State*, 938 So.2d 69 (La. 2006).

As discussed earlier, federal habeas review of a constitutional claim is barred by the procedural default doctrine if the last state court to review the claim clearly and expressly states that its judgment rests on a procedural bar, provided that the bar constitutes an independent and adequate state procedural rule that is regularly applied by the state courts. *Coleman*, 501 U.S. at 731-32. In order to satisfy the independence requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment rests on a state procedural bar. *Harris*, 489 U.S. at 263. A state procedural rule is "adequate" when it is strictly and regularly followed and applied evenhandedly to the vast majority of similar claims. *Amos*, 61 F.3d at 339. A presumption of adequacy arises when a state court expressly relies on a procedural bar in deciding not to review a claim for collateral relief. *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996). Various sections of this court have previously determined that the Article 930.3/*Melinie* bar constitutes an independent and adequate state procedural rule that is regularly applied by the state courts. *Tassin v. Lovell*, No. 99-CV-1630

---

[7]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 4 of 5.

(E.D. La. Oct. 26, 1999); *Williams v. Lensing*, No. 99-CV-1612, 1999 WL 670972 at *3-4 (E.D. La. Aug. 25, 1999); *Bibbins v. Andrews*, No. 99-CV-1398, 1999 WL 56273 at *2-3 (E.D. La. July 30, 1999); *Scott v. Cain*, No. 97-CV-3558, 1998 WL 273116 at *3 (E.D. La. May 27, 1998).

In light of the foregoing authorities, federal habeas review of the instant claim is barred by the procedural default doctrine. As noted earlier, an exception to the doctrine exists if petitioner can show cause for the procedural default and actual prejudice as a result of the alleged constitutional violation, or if he demonstrates that the failure to entertain the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Wallace, however, makes no showing of cause for having failed to properly litigate the instant claim in the state court system prior to submitting it to the court in his federal habeas petition. Because Wallace does not establish cause for his procedural default, the court need not consider the element of prejudice. *Murray*, 477 U.S. at 494-95. And no colorable showing of actual innocence being made here, Wallace has not shown that the failure to entertain his claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Bobby Wallace, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __17th__ day of ___September___, 2009.


LOUIS MOORE, JR.
United States Magistrate Judge